UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATLAS OIL COMPANY and
ATLAS OIL TRANSPORTATION,
INC.,

                          Case No. 20-cv-10877

           Plaintiffs,             Paul D. Borman
                                     United States District Judge

v.

EXTREME PETROLEUM SERVICES
COMPANY and GLENDA RENAE
AKIN,

           Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS ATLAS OIL COMPANY AND ATLAS OIL TRANSPORTATION, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF NO. 44) AND ORDERING A LIMITED EVIDENTIARY HEARING ON DAMAGES

Plaintiffs Atlas Oil Company and Atlas Oil Transportation, Inc. entered into agreements with Defendants Extreme Petroleum Services Company and Glenda Renae Akin on June 1, 2017, for Extreme Petroleum to purchase fuel from Atlas Oil for resale to Extreme Petroleum's customers. In or about January 2020, Extreme Petroleum stopped paying for the fuel that it continued to procure from Atlas Oil, and in April 2020, Plaintiffs filed this suit for breach of contract. In September 2020, the Court granted Plaintiffs' motion for summary judgment, in

part, and ordered partial judgment in favor of Atlas Oil in the amount of $731,075.43.

Now before the Court is Plaintiffs' Renewed Motion for Summary Judgment (ECF No. 44), which has been fully briefed. The Court does not believe that oral argument will aid in its disposition of the motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' renewed motion for summary judgment, and orders a limited evidentiary hearing on damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiffs Atlas Oil Company and Atlas Oil Transportation, Inc. are Michigan corporations based in Taylor, Michigan. Atlas Oil is a fuel distributor that offers single-source solutions for fuel, transportation, and logistics. Atlas Oil Transportation is an affiliate of Atlas Oil that offers local, regional, and over-the-road routes for safe delivery of fuel. (ECF No. 1, Compl. ¶¶ 1-2) (ECF No. 7-2, Declaration of Clint Werth dated June 9, 2020 (Werth Decl. I), ¶¶ 3-5, PageID.106.)

Defendant Extreme Petroleum Services Company is a fuel delivery company based in Texas. Defendant Renae Akin is the registered agent of Extreme Petroleum and resides in Texas. (Compl. ¶¶ 3-4.)

### 2. The Parties Enter Into the Master Agreement and Commercial Supply Agreement

Atlas Oil and Extreme Petroleum entered into a Master Agreement and a Commercial Supply Agreement on June 1, 2017 (collectively, the "Contracts"). (ECF No. 1-1, Master Agreement, PageID.14-20) (ECF No. 1-2, Commercial Supply Agreement, PageID.31-34). Pursuant to the Contracts, Extreme Petroleum agreed to purchase fuel from Atlas Oil as its exclusive supplier of fuel, for resale to Extreme Petroleum's customers in certain defined markets. (Master Agreement, PageID.14 (Recitals), 15(Fuel Supply).)

Pursuant to the Commercial Supply Agreement, Extreme Petroleum agreed to pay Atlas Oil a price of "[t]hree cents ($0.03) over customer billed per daily quoted prices" for Atlas Oil's fuel. (Commercial Supply Agreement, PageID.31.) (See ECF No. 44-2, Customer Pricing for Extreme Petroleum for 2017-2019, PageID.698-818.) The Contracts required Extreme Petroleum to make timely payments based on invoices issued by Atlas Oil, without regard to other shipments and with payment terms defined as "EFT Net 20 days." (Commercial Supply

Agreement, PageID.32.). The Contracts expressly provide that "[n]o discounts are authorized." (*Id.*)

Each invoice issued by Atlas Oil to Extreme Petroleum required Extreme Petroleum to make any request for a credit on an invoice "within 45 days of the date of delivery." (ECF No. 7-3, Atlas Oil Invoices, PageID.113-32). Atlas Oil asserts that Extreme Petroleum never requested any credit on any of the invoices at issue in this case. (ECF No. 44-3, Declaration of Clint Werth dated December 6, 2021 (Werth Decl. II) ¶ 16, PageID.822.)

Extreme Petroleum agreed that it would "pay the agreed price for each shipment without regard for any failure to deliver any subsequent amount of such products or the failure of any delivery of products to conform to the applicable warranties." (Commercial Supply Agreement, PageID.32). The Contracts further provided that "[a]ny failure by [Extreme Petroleum] to pay for any shipment within the time for payment is an anticipatory material breach with regard to other shipments." (*Id.*)

To secure the prompt payment of all existing and future obligations of Extreme Petroleum to Atlas Oil, Extreme Petroleum granted a security interest to Atlas Oil in Extreme Petroleum's equipment and inventory, among other defined

4

collateral (collectively, the "Collateral"). (Master Agreement ¶ 2(c), PageID.15.)

Specifically, the Contracts provided:

> (c) Security Interest. To secure the prompt payment of all existing and future obligations of Extreme Petroleum to Atlas, whether arising under this Agreement, the Commercial Supply Agreement or otherwise, Extreme Petroleum grants Atlas a security interest in all of Extreme Petroleum's right, title, and interest in and to the following, whether now owned or hereafter arising or acquired and wherever located (collectively, the 'Collateral'): all Accounts, all Chattel Paper, all General Intangibles, all Equipment, all Inventory, all Documents, all Instruments, all Fixtures, and all proceeds and products of the foregoing. Atlas will have all rights of a Secured Party. Capitalized terms used but not defined in this Section 2.(c) shall have the meanings given them in Article 9 of the Uniform Commercial Code as enacted in Michigan (Michigan Complied [sic] Laws, Chapter 440). Atlas may file one or more financing statements or other appropriate documents and do any other things necessary to perfect and enforce its security interest in the Collateral.

(*Id*.)

The Contracts further provide that Atlas may terminate the Contracts at any time for breach by Extreme Petroleum in its performance under those Contracts, or for any breach by Defendant Glenda Renae Akin of any of the Guaranty provisions (discussed *infra*), stating:

> **4. Termination.**
>
> (a) Termination by Atlas. This Agreement and the Commercial Supply Agreement may be terminated by Atlas at any time: (i) for a breach by Extreme Petroleum in its performance of any provision of this Agreement or the Commercial Supply Agreement, or (ii) for a

5

breach by Renee [sic] Akin of any of the provisions set forth in the Guaranty.

. . .

(c) Effects of Termination. In the event of the termination of this Agreement at its expiration date or prior thereto as permitted by this Agreement or by operation of law or otherwise, the provisions of Sections 3(b), 3(f), 5 and 6(b) hereof will survive and continue in effect; additionally, any amounts owing by any party hereunder to any other party will be owing following such termination.

(Master Agreement ¶ 4(a), (c), PageID.16.)

The Contracts also contain Michigan choice-of-law and venue provisions, waiver of Extreme Petroleum's right to a jury trial, and provide that the prevailing party in any action brought under the Contracts is entitled to recover from the other party "its reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such action." (Master Agreement ¶ 6(g), PageID.18.)

### 3.   The Parties' Lease Agreements

The Master Agreement provided Atlas Oil with the right, in its sole discretion, to lease trucks or other equipment to Extreme Petroleum during the term of the Master Agreement, pursuant to separate lease agreements. (Master Agreement ¶ 6(b), PageID.17.) Pursuant to its discretion under the terms of the Master Agreement, Atlas Oil caused Plaintiff Atlas Oil Transportation to enter into two lease agreements with Extreme Petroleum, dated August 18, 2017 and October

31, 2017 (collectively, the "Lease Agreements"). (ECF No. 1-5, Lease Agreements, PageID.45-54.)

Under the Lease Agreements, Extreme Petroleum leased two 2018 Kenworth T880 commercial trucks (the "Leased Vehicles") from Atlas Oil Transportation. (*Id.*) Under the Lease Agreements, Extreme Petroleum agreed to bear the entire risk of loss and damage to any Leased Vehicle:

> [Extreme Petroleum] hereby assumes and shall bear the entire risk of loss and damage to the Leased Vehicle from any and every cause whatsoever. No loss or damage to the Leased Vehicle or any part thereof shall impair any obligation of [Extreme Petroleum] under this Lease, which shall continue in full force and effect through the term of the Lease. In the event of loss or damage of any kind whatever to the Lease Vehicle, [Extreme Petroleum] shall, at [Atlas Oil Transportation's] option: Place the same in good repair, condition, and working order; or pay to Lessor the replacement cost of the Leased Vehicle.

(*Id*. ¶ 7, PageID.45, 50.)

Moreover, Extreme Petroleum agreed to pay all fees and taxes on the Leased Vehicles, including any sales tax:

> Lessee, or Lessor at Lessee's expense, shall report, pay and discharge when due all license and registration fees, assessments, sales, use and property taxes, gross receipts, taxes arising out of receipts from use or operation of the Leased Vehicle, and other taxes, fees, and governmental charges similar or dissimilar to the forgoing, together with any penalties or interest thereon, imposed by any state, federal or local government or any Vehicle or otherwise in any manner with

respect thereto and whether or not the same shall be assessed against
or in the name of the Lessor or Lessee.

(*Id.* ¶ 10, PageID.46, 51.)

The Lease Agreements provide that upon the expiration or earlier termination of the Lease Agreements, Extreme Petroleum shall return the Leased Vehicles to Atlas Oil Transportation "in good repair, condition and working order," at Extreme Petroleum's sole expense, "by delivering the Leased Vehicle at [Extreme Petroleum's] cost and expenses to such place as [Atlas Oil Transportation] shall specify." (*Id.* ¶ 8, PageID.45, 50.) Moreover, in the event of any breach by Extreme Petroleum, the Lease Agreements provide Atlas Oil Transportation with (among other rights) the right to sue for and recover all rents and payments and take possession of the Leased Vehicles without demand or notice  (*Id.* ¶ 13, PageID.46, 51.)

### 4.    The Guaranty Agreement

To induce Atlas Oil to enter into and perform under the Contracts, Defendant Akin personally executed a guaranty agreement (the "Guaranty"). (ECF No. 1-3, Guaranty, PageID.36-39). Pursuant to the Guaranty, Ms. Akin personally guaranteed the full and timely payment of all of Extreme Petroleum's obligations to Atlas Oil under the Contracts:

8

The undersigned hereby guarantees the full, faithful and timely payment and performance by [Extreme Petroleum] of any and all obligations of Purchaser under or pursuant to the Contract. If [Extreme Petroleum] shall default at any time in the payment of any principal, interest, sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of [Extreme Petroleum], under or pursuant to the Contract, and in addition shall on [Atlas Oil's] demand pay to [Atlas Oil] any and all sums due to [Atlas Oil], including (without limitation) all interest on past due obligations of [Extreme Petroleum], costs advanced by [Extreme Petroleum] and damages and all expenses (including attorneys' fees and litigation costs), that may arise in consequence of [Extreme Petroleum's] default. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or nonperformance by [Extreme Petroleum]. This Guaranty is a guaranty of payment and not of collection.

(*Id.* ¶ 1, PageID.36.)

Ms. Akin further agreed that her obligations under the Guaranty are independent of, and may exceed, the obligations of Extreme Petroleum. (*Id.* ¶ 2.) Ms. Akin also agreed that Atlas Oil could join her to any action it may have against Extreme Petroleum arising out of, or related to the Contracts. (*Id.*) Finally, Ms. Akin further agreed that the prevailing party in an action to enforce the Guaranty would be entitled to the recovery of its reasonable attorney fees. (*Id.* ¶ 9, PageID.37.)

### 5.      The Parties' Performance Under the Contracts

9

Atlas Oil supplied fuel to certain terminals located in numerous locations, which its customers (including Extreme Petroleum during the time period relevant to this lawsuit) accessed to obtain fuel. (Werth Decl. I, ¶ 14, PageID.107.) In the ordinary course of business, Extreme Petroleum would order fuel and load it into its trucks from terminals to which Atlas Oil had previously supplied fuel. (*Id.*)

Every time Extreme Petroleum would order and procure fuel from these terminals, that transaction was electronically recorded on Atlas Oil's software, where it would track all of its customers' transactions by User ID, Submission Date, Terminal ID, Shipment Date, Order/Release Number, Product Code Type, Gross Amount, Net Amount, Carrier Number, Authorization Number, Vehicle Number, Seller ID, Final Shipper ID, and Start Load Date, among other data. (*Id.* ¶ 16, PageID.108.) Through the above-referenced terminals and transactions, Atlas Oil delivered fuel to Extreme Petroleum, consistent with its obligations under the Contracts. (*Id.* ¶ 18, PageID.108.)

In the ordinary course of business, Atlas Oil would send invoices to Extreme Petroleum for Extreme Petroleum's fuel purchases. (*Id.* ¶ 19, PageID.108) (See ECF No. 7-3, Invoices for the products and services provided by Atlas Oil to Extreme Petroleum during the time period relevant to this lawsuit, PageID.113-32.)

### 6.   Defendants Breach of the Agreements

Extreme Petroleum paid some, but not all, of the charges due and owing to Atlas Oil under the Agreements. (Werth Decl. I ¶ 20, PageID.108.). Specifically, Atlas Oil alleges in its Complaint that Extreme Petroleum stopped paying for the fuel that it continued to procure starting in or about January 2020, and that Defendants owed $1,140,148.62 in connection with past due invoices issued by Atlas Oil, at the time Plaintiffs filed their Complaint in this case. (Compl. ¶ 13.)

Plaintiffs demanded the payment of this past due amount from Defendants, including in correspondence to Extreme Petroleum dated March 27, 2020. (ECF No. 1-4, March 27, 2020 Letter, PageID.42-43.) In this March 2020 correspondence, Plaintiffs provided to Defendants "formal notice of default and material breach of the" Contracts, and termination of the Lease Agreements, and informed Defendants to contact Plaintiffs' counsel "with[in] five (5) days of the date of this letter to make arrangements for payment of the past due amount and return of the leased vehicles." (*Id.*)

## B.    Procedural Background

On April 6, 2020, Plaintiffs filed the instant suit alleging that Defendants have failed to pay the claimed monies due and owing. (ECF No. 1, Complaint.) Plaintiffs allege six claims against Defendants: (1) Count I – Breach of Contract (Defendant Extreme Petroleum); (2) Count II – Breach of Contract (Defendant

11

Renae Akin); (3) Count III – Breach of Lease Agreements (Defendant Extreme Petroleum); (4) Count IV – Claim and Delivery – Leased Vehicles (Defendant Extreme Petroleum); (5) Count V – Claim and Delivery/Foreclosure of Security Interest (Defendant Extreme Petroleum); and (6) Count VI – Attorney Fees (Both Defendants). (Compl.)

Defendants filed an Answer to Plaintiffs' Complaint on May 22, 2020. (ECF No. 5.)

On June 9, 2020, Plaintiffs moved for summary judgment on all claims against Defendants, arguing that Defendants owe, at that time, $1,156.137.11, plus interest, costs and attorneys' fees. (ECF No. 7, Pls.' Mot. S.J.)

On June 29, 2020, Defendants filed a Response in Opposition to Plaintiffs' motion, arguing that summary judgment was premature because the parties had not engaged in any discovery. (ECF No. 12.) Defendants further contended that Extreme Petroleum "owes no more than $731,075.43, which does not include other offsets to [which] Extreme Petroleum is entitled." (*Id.* PageID.193, citing ECF No. 12-1, Declaration of Glenda Akin (Akin Decl. I) ¶ 6, PageID.201.) Defendants further stated that the two Leased Vehicles would be delivered to Atlas Oil in Taylor, Michigan on July 16th or 17th, 2020. (*Id.* PageID.194, citing Akin Decl. I ¶ 7, PageID.201.)

12

Plaintiffs filed a reply brief arguing that, based on Defendants' "admission" in their Response brief, Plaintiffs are entitled to, at a minimum, partial summary judgment in the amount of $731,074.43. (ECF No. 13.) Plaintiffs further argued that even with a set off to Extreme Petroleum, Defendants still owe $950,000 to Plaintiffs. (*Id.* PageID.212.)

On September 4, 2020, following a status conference with the parties, the Court entered Partial Judgment for Plaintiffs in the amount of $731,075.43, plus contractual interest. (ECF No. 15.)[1] The Court reserved judgment for contractual costs and attorney fees, to be decided upon entry of a final judgment. (*Id.*) And on March 4, 2021, the Court entered an Order Denying in Part Plaintiffs' Motion for Summary Judgment, finding that Defendants must be provided an opportunity to conduct discovery, and providing that "Plaintiffs may file a new Motion for Summary Judgment after the close of discovery." (ECF No. 23.)

On December 6, 2021, following the close of discovery, Plaintiffs filed the instant Renewed Motion for Summary Judgment. (ECF No. 44, Pls.' Mot.) Plaintiffs contend that they are entitled to summary judgment against Defendants

---

[1] The Court subsequently entered a stipulated order on May 17, 2021, providing that "Defendants will pay to Plaintiffs $10,000 a week, starting the week of May 17, 2021, towards the Partial judgment amount of $731,075.43 (plus contractual interest at a rate of 1.5% per month)[.]" (ECF No. 31.)

in the remaining principal amount of **$424,685.68**, less a setoff of **$192,585.42**, for a total principal amount owed of **$232,100.26**, plus interest. In addition, Plaintiffs argue that they are entitled to summary judgment against Extreme Petroleum in the principal amount of **$32,033.80** for breach of the Lease Agreements. Plaintiffs further assert they are entitled to an award of attorney fees and costs.

Defendants filed a Response in opposition to Plaintiffs' Renewed Motion for Summary Judgment. (ECF No. 49, Defs.' Resp.) Defendants argue that Plaintiffs' motion should be denied because there are genuine issues of material fact as to whether Defendants are entitled to an offset against the amount claimed by Plaintiffs. Defendants further contend that Plaintiffs' claim for repair costs for the Leased Vehicles should be denied because Plaintiffs never disclosed that claim until the filing of its Renewed Motion, and the repair costs were invoiced over a year after Extreme Petroleum returned the trucks to Atlas Oil.

Plaintiffs filed a Reply brief in support of their Renewed Motion for Summary Judgment. (ECF No. 47, Pls.' Reply.) Plaintiffs argue that Defendants' claims for additional offsets are unsupported and meritless, and that Plaintiffs timely disclosed their claim for $32,033.80 for breach of the Lease Agreements because they only discovered the damage to the leased truck in September 2021, they first incurred damages in November 2021 when they paid the invoice for the

14

repairs, and that they timely notified Defendants of the claim on December 6, 2021, when Plaintiffs filed their renewed motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere

possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).  That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.  ANALYSIS

### A.    Atlas Oil's Breach of Contract Claim Against Extreme Petroleum (Count I)

"A party claiming a breach of contract must establish '(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach.'" *Dunn v. Bennett*, 303 Mich. App. 767, 774 (2013) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56, 71 (2012), *rev'd in part on other grounds*, 495 Mich. 161 (2014)). "The remedy for breach of contract is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v. Huron Castings, Inc.*, 450 Mich. 620, 625 (1996). Plaintiffs have the burden of proving their damages resulting from Defendants' breach of the Agreements. *See Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512 (2003) ("The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach.").

The parties here agree that Atlas Oil and Extreme Petroleum are parties to the Master Agreement and the Commercial Supply Agreement, which are valid and binding agreements governed by Michigan law. (Compl. ¶ 22) (Defs.' Answer ¶

17

22.) Plaintiffs contend that, pursuant to the Master Agreement and Commercial Supply Agreement, Extreme Petroleum agreed to purchase fuel from Atlas Oil as its exclusive supplier and to timely pay all invoices issued by Atlas Oil, with payment terms defined as "EFT Net 20 days." (Master Agreement, PageID.15.) The parties agreed that "[a]ny failure by [Extreme Petroleum] to pay for any shipment within the time for payment is an anticipatory material breach with regard to other shipments." (Commercial Supply Agreement, PageID.32.) Atlas Oil contends in its Renewed Motion for Summary Judgment that it has fully performed its obligations under the Contracts, and that Extreme Petroleum has materially breached the Contracts by failing to pay the amounts due and owing to Atlas Oil, starting in or about January 2020. (Pls.' Mot. at p. 15, PageID.685.)

Defendants do not dispute that they breached the Contracts by failing to pay all invoices issued by Atlas Oil when due starting in or about January 2020. Accordingly, Plaintiffs are entitled to summary judgment on their breach of contract claim in Count I as to liability. The Court has entered a partial judgment in favor of Plaintiff in the amount of $731,075.43. The issue to be decided by the Court is the remaining amount of damages, if any, Plaintiffs are entitled to recover for Defendants' breach of the Contracts.

Atlas Oil argues that, after the Court's award of partial judgment in its favor in the amount of $731,075.43, the undisputed facts establish that it is entitled to summary judgment against Defendants in the remaining principal amount of $424,685.68, less a setoff in the amount of $192,585.42 for third-party carrier services that Extreme Petroleum provided, for a total principal amount owed of $232,100.26. (Pls.' Mot. at pp. 15-16, PageID.685-86, citing ECF No. 17-2, Declaration of Charles Wellman dated October 26, 2020 (Wellman Decl. II), ¶¶ 9-12, PageID.247.)

In their Response brief, Defendants do not specifically address, much less contest, Plaintiffs' calculations that Defendants owe $424,685.68 in principal based on the unpaid invoices, and that Defendants are entitled to a set-off in the amount of $192,585.42 for third party carrier services Extreme Petroleum provided. The Court will therefore accept those figures as undisputed. Rather, Defendants argue that summary judgment for Plaintiffs should be denied because Defendants are entitled to *additional* offsets against any remaining amount owed to Plaintiffs, and therefore genuine issues of material fact remain as to the total balance owed by Extreme Petroleum for breach of the Contracts. (Defs.' Resp. at pp. 5-6, PageID.1033-34.)

19

Specifically, Defendants asserts the following additional claims for offset: (1) for alleged duplicate billing in the amount of $390,500.29; (2) for alleged failure to keep Extreme Petroleum supplied with its requirements in the amount of $403,041.15; (3) for alleged inaccurate pricing in the amount of approximately $10,000; (4) for an alleged duplicate payment in the amount of $33,826.25; (5) for an alleged unauthorized draft in the amount of $5,644.69; (6) for alleged failure to reimburse Defendants for sales tax paid on the Leased Vehicles in the amount of $27,479.59; and (7) for alleged failure to account for post-litigation payments made by Defendants to Plaintiffs in the amount of $480,001.00. (*Id.*)

"Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other." *Walker v. Farmers Ins. Exch.*, 226 Mich. App. 75, 79 (1997); *see also Citizen's Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"). A "setoff may be used to offset a plaintiff's claim, but it may not ... be used to recover affirmatively; a setoff is a reduction from an amount otherwise owed and cannot result in a net recovery in favor of the party asserting the defense of setoff." *Royer Consulting Grp., Inc. v. RC Co.*, No. 257620, 2006 WL 859439,

20

at *2 (Mich. Ct. App. Apr. 4, 2006) (quoting 20 Am. Jur. 2d, Counterclaim, Recoupment, etc. § 6, p. 270) (cleaned up). "Unless specifically authorized by statute in a particular instance, setoff is a matter in equity based on equitable principles." *Mahesh v. Mills*, 237 Mich. App. 359, 361 (1999).

The Court will address each of Defendants' claims for setoff in turn.

### 1. Alleged duplicate billing

Defendants first claim "an offset for duplicate billing on Atlas Oil's invoices to Extreme" in the amount of $390,500.29. (Defs.' Resp. at pp. 3, 5-6, PageID.1031, 1033-34.) Defendants contend there are four instances of "duplicate billing" by Atlas Oil: (1) October and November 2018 for $69,477.75; (2) November and December 2018 for $61,673.88; (3) March and April 2019 for $65,930.92; and (4) December 2019 and January 2020 for $193,417.74. (*Id.*) Defendants rely on Renae Akins' declaration, and Exhibit A thereto, for support. (ECF No. 49-2, Declaration of Renae Akins (Akins Decl. III) ¶ 6, PageID.1042, citing ECF No. 49-3, Duplicate billing report, PageID.1047-55.)

Plaintiffs argue in their Reply brief that this "duplicate billing" offset claim is meritless. (Pls.' Reply at p. 1, PageID.1018.) Plaintiffs first contend that Defendants have failed to provide any evidence that they actually paid any of the initial charges they identify, much less that they paid "duplicate" charges, and that

"Extreme Petroleum cannot be entitled to an offset for amounts it admittedly never even paid." (*Id.*) Plaintiffs further assert that no charges were duplicated, but that certain billings were "merely carried forward and re-billed because Extreme Petroleum failed to pay the initial charges." (*Id.*) Plaintiffs point to Atlas Oil's summary of invoices and transactions comprising the remaining amounts due in this case, in which there are no alleged instances of duplicate billings for the amount claimed due. (See ECF No. 13-1, Declaration of Charles Wellman dated July 28, 2020 (Wellman Decl. I) ¶¶ 5-9, PageID.221-22, with spreadsheet summarizing unpaid invoices at PageID.224-31.)

The Court finds that Defendants' claim for offset for alleged duplicate charges is insufficient to create a genuine issue of material fact that Defendants are entitled to a setoff for these charges. Michigan law places the burden of proving setoff on the party who claims it. *See CJPS Healthcare Supplies & Equipment v. Ansar Medical Technologies, Inc.*, No. 12-cv-14885, 2013 WL 4502176, at *5 n.4 (E.D. Mich. Aug. 22, 2013); *see Martin v. Weaver*, 666 F.2d 1013, 1019 (6th Cir. 1981) ("The burden of proving an affirmative defense by a preponderance of the credible evidence is on the party asserting the defense."). Defendants have provided no evidence that these alleged duplicate charges resulted in actual duplicate *payments* by Extreme Petroleum to Atlas Oil. *See CJPS Healthcare*

22

*Supplies & Equipment*, 2013 WL 4502176, at *5 (denying defendant's claim for set-off because defendant "has presented no evidence regarding the monetary amount of damages it incurred") (citing *Antrican v. Grand Exhaust Sys., Inc.*, 956 F.2d 268, 1992 WL 43541, at *8 (Table) (6th Cir. 1992) ("In failing to provide the court with accurate and trustworthy evidence establishing the amount [of] the setoff, the defendants failed to carry their burden.")). Akins' declaration in support of Defendants' argument for setoff refers to being "charged" for these four alleged duplicate amounts, and the exhibit she relies on refers to amounts "Over Charged / Duplicate Billing," but Akins' declaration and the exhibit do not state or otherwise indicate that Defendants ever *paid* any of these amounts. (See Akins Decl. III, ¶ 6, PageID.1042; Report, PageID.1045-55.) In fact, Defendants assert a separate claim for offset regarding an alleged "[d]uplicate *payment*" of a separate amount (See Defs.' Resp. at p. 4, PageID.1032 (emphasis added)), lending further support that Defendants did not pay these alleged duplicate charges. Defendants are not entitled to an alleged offset for amounts that were charged but not paid.[2]

---

[2] In addition, review of Defendants' records show that the second or alleged "duplicate" charges in November 2018 and December 2018 are immediately followed by a $75 charge, which appears (from Plaintiffs' records) to be a charge for "not sufficient funds." (See ECF No. 49-3, PageID.1049, 1051). In addition, Defendants fail to even include a record showing the alleged "duplicate" charge in April 2019, and instead only attach the March 2019 record with a handwritten notation that Atlas Oil "*tried* to draft" the amount on April 11, 2019. (*Id.* PageID.1052 (emphasis added).)

The Court finds that Defendants have failed to provide sufficient evidence that they made any duplicate *payments* that would entitle them to an offset against the $232,100.26 balance claimed due by Atlas Oil for breach of the parties' Contracts, and thus denies this claim for offset.

### 2.    Alleged failure to meet supply obligations

Defendants next claim an offset for Atlas Oil's alleged "failure to meet its obligation to supply Extreme Petroleum's requirements for fuel and keep Extreme Petroleum's account open at the terminals to load fuel." (Defs.' Resp. at pp. 3-4, 6, PageID.1031-32, 1034.) Defendants allege that "[f]rom December 31, 2018, through December 31, 2019, there were 77 instances where Atlas Oil failed to meet its obligation to supply Extreme Petroleum's requirements for fuel, which caused Extreme Petroleum to incur damages for downtime and driver time" in the amount of $403,041.15. (*Id.*) (Akin Decl. III, ¶ 7, PageID.1042, citing ECF No. 49-4, Terminal status report, PageID.1057-69.)

Plaintiffs argue in their motion that this argument is meritless because: (1) Atlas Oil does not own the terminals that Extreme Petroleum uses to obtain fuel; (2) Atlas Oil has no control over the terminals that Extreme Petroleum uses; and (3) Atlas Oil does not control the scheduling of fuel from the pipelines to the terminals. (Pls.' Mot. at pp. 18-19, PageID.688-89, citing Werth Decl. II ¶¶ 7-11,

24

PageID.821-22.) Plaintiffs contend therefore that to the extent a terminal Extreme Petroleum sought to access was out of fuel, Atlas Oil had no role in that. (*Id.*) (Pls.' Reply at p. 2, PageID.1019.)

Defendants do not dispute, or even respond to, Plaintiffs' argument regarding the absence of Atlas Oil's role in Plaintiffs' access to terminals. The Court finds that Plaintiffs have demonstrated that Atlas Oil has no role in Extreme Petroleum's alleged failures to access fuel from the terminals a certain times, and thus Defendants fail to establish a right to offset on this basis.

Plaintiffs further argue that, even if Atlas Oil could somehow be responsible for Extreme Petroleum's alleged failure to load fuel at a terminal, Extreme Petroleum expressly agreed in the Commercial Supply Agreement, under the "Disclaimers and Limitations of Liability" provision, that:

> ATLAS WILL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOSS OF REVENUE OR PROFITS) ARISING FROM OR CAUSED, DIRECTLY OR INDIRECTLY … BY THE PERFORMANCE OR FAILURE OF ATLAS TO PERFORM UNDER THESE TERMS; BY ANY OTHER ACT OR OMISSION OF ATLAS; OR BY ANY OTHER CAUSE.

(Commercial Supply Agreement ¶ 9, PageID.32-33 (capitalization in original).) Atlas Oil "warrants solely to [Extreme Petroleum] that each product supplied …

25

will conform to the express written description of the product contained in the Order." (*Id.* ¶ 8, PageID.32.)

Thus, because Defendants have failed to show that Atlas Oil had any role or responsibility with regard to Extreme Petroleum's ability to obtain fuel from terminal, and because Atlas Oil is not contractually liable for any "indirect, special or consequential damages" to Defendants (such as for "downtime and driver time," as claimed by Defendants), the Court finds that Defendants' offset claim for $403,041.15 fails.

### 3.    Alleged inaccurate pricing of fuel

Defendants claim an offset for Atlas Oil's alleged "failure to bill Extreme Petroleum accurately on the price of fuel based on the market/cost changes." (Defs.' Resp. at pp. 4, 6, PageID.1032, 1034.) Defendants assert that the market dropped many times and Extreme Petroleum did not get the benefit of the dropped price, and Defendants seek an offset of "approximately $10,000." (*Id.*) (Akins Decl. III ¶ 9, citing ECF No. 49-6, Invoices, PageID.1073-1178.)

Plaintiffs argue in their motion that this offset claim is baseless because Extreme Petroleum agreed in the Contracts that the "Price of Products to be sold" would always be "[t]hree cents ($.03) over customer billed per daily quoted prices." (Pls.' Mot. at pp. 17-18, PageID.687-88, citing Commercial Supply Agreement, PageID.31.) Plaintiffs explain that the price of fuel was set when the fuel left Atlas' location. (Commercial Supply Agreement ¶ 1, PageID.31.) Extreme Petroleum also agreed that "[n]o discounts are authorized." (*Id.* ¶ 2, PageID.32.) Plaintiffs assert that Atlas Oil always billed Extreme Petroleum for the fuel it purchased at three cents over customer billed per daily quoted prices, as set forth in the parties' Agreements and Atlas Oil's pricing lists. (Werth Decl. II, ¶ 13, PageID.822.)

In their Response brief, Defendants fail to acknowledge the Contracts' price requirement or respond to Plaintiffs' sworn statement that it always billed Extreme Petroleum as set forth in the parties' Contracts. The Contracts do not provide for pricing based on "market/cost changes." The Court finds that this claim for offset has no basis and does not create a fact issue precluding summary judgment.

### 4.    Alleged duplicate payment in the amount of $33,826.25

Defendants claim that Extreme Petroleum made a duplicate payment to Atlas Oil on April 26, 2019, in the amount of $33,826.25, for which Atlas Oil failed to credit Extreme Petroleum, and that Defendants are entitled to offset this amount against any payment they owe to Plaintiffs. Defendants rely on records showing that a payment to Atlas Oil in the amount of $33,826.25 was made on April 26, 2019, and that a payment to Atlas Oil in the amount of $33,826.26 was made on May 3, 2019. (Defs.' Resp. at pp. 4, 6, PageID.1032, 1034, citing Akins Decl. III ¶ 10, PageID.1043, ECF No. 49-7, Payments, PageID.1180-81.)

Plaintiffs respond that this claim is meritless for several reasons. Plaintiffs first argue Defendants fail to show that the two payments in ECF No. 49-7 are in fact duplicates and paid toward the same Atlas Oil charge/product, and that the April 26, 2019 payment is for $33,826.2**5** and the May 3, 2019 payment is for $33,826.2**6**. (Pls.' Reply at pp. 3-4, PageID.1020-21, citing ECF No. 49-7,

PageID.1080-81.) Plaintiffs further point out that the two payments were made from two different bank accounts. (*Id.*)[3]

The Court finds that Defendants have presented sufficient evidence to create a fact issue as to whether Defendants are entitled to an offset for a duplicate payment to Plaintiffs in the amount of $33,826.25, or whether the two payments were for two separate Atlas Oil charges/products. The Court will schedule a limited evidentiary hearing to address this claim.

---

[3] Plaintiffs also contend, in any event, that the April and May 2019 payments are not at issue in this case, which involves Atlas Oil's claim for transactions occurring from December 2019 through March 2020. (*Id.*) However, "a claim of setoff does not need to relate to the transaction or contract for which plaintiffs seek recovery." *UUSI, LLC v. Stieg*, No. 348272, 2021 WL 297268, at *5 (Mich. Ct. App. Jan. 28, 2021) (citations omitted) (explaining that a claim of setoff grows out of a matter independent of the plaintiff's cause of action and arises when there is mutual debt between the parties).

### 5.    Alleged unauthorized draft in the amount of $5,644.69

Defendants claim an offset for an alleged unauthorized draft that Atlas Oil made to Extreme Petroleum's bank account on September 25, 2019, in the amount of $5,644.69. (Defs.' Resp. at pp. 4, 6, PageID.1032, 1034.) (Akins Decl. III ¶ 11, PageID.1043, citing ECF No. 49-8, Draft, PageID.1183.)

Plaintiffs assert in their Reply brief that this payment was a monthly lease payment made by Extreme Petroleum under the Lease Agreement for its lease of the vehicles at issue. (Pls.' Reply at p. 4, PageID.1021.) However, Plaintiffs provide no support for that assertion, and the two Lease Agreements at issue provide for monthly installment payments of $4,358 per vehicle. (Lease Agreements, PageID.45, 50.)

The Court finds that Defendants have presented sufficient evidence to create a fact issue as to whether Defendants made an unauthorized draft to Extreme Petroleum's bank account in the amount of $5,644.69. The Court will schedule a limited evidentiary hearing to address this claim for offset.

### 6.    Alleged offset for sales tax

Defendants argue that Atlas Oil should pay it "for $27,479.59 [that Extreme Petroleum paid] in sales tax for the two lease trucks." (Defs.' Resp. at pp. 5-6, PageID.1033-34.) Defendants assert that Extreme Petroleum paid the sale tax on the trucks in February of 2018 at the request of the then-president of Atlas Oil, who promised Extreme Petroleum that it would be reimbursed. (*Id.*) (Akins Decl. III ¶ 12, PageID.1043-44, citing ECF No. 49-9, Sales Tax, PageID1185.)

Plaintiffs argue in their Renewed Motion for Summary Judgment that Extreme Petroleum agreed in the two Lease Agreements that Extreme Petroleum – not Atlas Oil – was required to pay any sales tax assessed on the Leased Vehicles. (Pls.' Mot. at p. 16, PageID.686, citing Lease Agreements at ¶ 10, PageID.46, 51.) Plaintiffs argue that Defendants cannot now avoid summary judgment with an affidavit by Ms. Akin that contradicts the express provisions of the contracts she signed, and which she admits are valid and binding on the parties. (*Id. citing Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) (holding that a defendant is "bound by admissions in [its] pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit").)

The Court finds that Defendants' claimed offset for the sales tax paid for the two Leased Vehicles is meritless and fails, based on the express language of the

31

parties' Lease Agreements, which Defendants admit are valid and binding agreements.

### 7.    Alleged post-litigation payments

Defendants claim that Extreme Petroleum should receive an offset for "post-litigation payments in the amount of $340,001." (Defs.' Resp. at pp. 5-6, PageID.1033-34.) Defendants assert that Extreme Petroleum agreed to pay $10,000 per week on any alleged balance owed to Atlas Oil, with payments starting the week of May 17, 2001. (*Id.*) Defendant Akin asserts that Extreme Petroleum has paid $480,001 as of April 19, 2022. (Akins Decl. III ¶ 17, PageID.1044, citing ECF No. 49-10, Payment Report, PageID.1187.)

Plaintiffs respond that these payments were made by Extreme Petroleum pursuant to the Court's May 17, 2021 Order Regarding Plaintiffs' Motion to Compel, which provided:

> Defendants will pay to Plaintiffs $10,000 a week, starting the week of May 17, 2021, **towards the Partial Judgment amount of $731,075.43** (plus contractual interest at a rate of 1.5% per month) previously entered by this Court against Defendants (ECF No. 15) until the Partial Judgment amount is satisfied or the parties otherwise agree.

(ECF No. 31, ¶ 5, PageID.516 (emphasis added).) Plaintiffs contend that the Partial Judgment amount has not been satisfied and the parties have not reached any other

agreement regarding Defendants' payments. (Pls.' Reply at p. 5, PageID.1022.) Defendants have not provided any evidence to the contrary.

The Court rejects Defendants' bold request that their payments to Plaintiffs pursuant to the Court's May 17, 2021 Order in any way offset the remaining balance claimed by Plaintiffs in this motion.

To summarize, the Court grants Plaintiffs summary judgment on their breach of contract claim against Extreme Petroleum in Count I of the Complaint as to liability. The Court further accepts as undisputed Plaintiffs' calculations that, following the partial judgment award in this case, Defendants continue to owe $424,685.68 in principal based on the unpaid invoices, and that Defendants are entitled to a set-off in the amount of $192,585.42 for third party carrier services Extreme Petroleum provided, for a total principal amount owed, before any additional offsets discussed herein, of $232,100.26.

The Court rejects as meritless Defendants' claims for additional offsets for: (1) alleged duplicate billing in the amount of $390,500.29; (2) alleged failure to keep Extreme Petroleum supplied with its requirements; (3) alleged inaccurate pricing of fuel; (4) sales tax payments for the two Leased Vehicles; and (5) post-litigation payments.

The Court finds that there is a fact issue as to Defendants' claims for offset for (1) an alleged duplicate payment in the amount of $33,826.25 and (2) an alleged unauthorized draft for $5,644.69, and will schedule an evidentiary hearing to address those two claims.

## B. Atlas Oil's Breach of Contract Claim Against Akin (Count II)

Plaintiffs assert a breach of contract claim against Defendant Renae Akin for breach of the Guaranty. (Compl. Count II.) Plaintiffs allege that Akin breached the Guaranty "by, among other things, failing to pay Extreme Petroleum's obligations to Atlas Oil." (*Id.* ¶ 29.)

Plaintiffs argue in their Renewed Motion for Summary Judgment that because Atlas Oil is entitled to summary judgment on its breach of contract claim against Extreme Petroleum, it is also entitled to summary judgment on its breach of contract claim against Akin. (Pls.' Mot. at pp. 19-20, PageID.689-90.) Plaintiffs contend that, under the Guaranty, Ms. Akin guaranteed Extreme Petroleum's obligations under the Agreements, and that Ms. Akin has breached the Guaranty by, among other things, failing to pay Extreme Petroleum's obligations to Atlas Oil. (*Id.*, citing Werth Decl. I at ¶¶ 23-24, PageID.109.) Plaintiffs assert that Atlas Oil is entitled to summary judgment against Akin in the remaining principal

amount of $424,685.68, less a setoff of $192,585.42, for a total principal amount owed of $232,100.26.

Defendants argue in their Response brief only that Akin, as a guarantor, may raise the same defenses asserted by Extreme Petroleum above, and that the Court should deny summary judgment against Renae Akin for the same reasons as against Extreme Petroleum. (Defs.' Resp. at p. 7, PageID.1035, citing *Gatzaros v. Sault Ste. Marie Tribe of Chippewa Indians*, 575 F. App'x 549, 553-54 (6th Cir. 2014) ("'The guarantor may generally raise as a defense to liability on the guaranty any defense that could be raised by the principal debtor' with certain limited exceptions.").) *See also In re Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir. 1991) (Under Michigan law, "a guarantor may assert both the defenses available to the primary obligor regarding the principal obligation on the debt and any personal defenses that arise out of the guaranty obligation.") (citation omitted).

For the same reasons as explained above, the Court grants Plaintiffs summary judgment on their breach of contract claim against Defendant Renae Akin in Count II of the Complaint as to liability. The Court further accepts as undisputed Plaintiffs' calculations that, following the partial judgment award in this case, that Defendants continue to owe $424,685.68 in principal based on the unpaid invoices, and that Defendants are entitled to a set-off in the amount of

$192,585.42 for third party carrier services Extreme Petroleum provided, for a total principal amount owed, before any additional offsets discussed herein, of $232,100.26.

The Court rejects as meritless Defendants' claims for additional offsets for: (1) alleged duplicate billing in the amount of $390,500.29; (2) alleged failure to keep Extreme Petroleum supplied with its requirements; (3) alleged inaccurate pricing of fuel; (4) sales tax payments for the two Leased Vehicles; and (5) post-litigation payments.

The Court finds that there is a fact issue as to Defendants' claims for offset for (1) an alleged duplicate payment in the amount of $33,826.25 and (2) an alleged unauthorized draft for $5,644.69, and will schedule an evidentiary hearing to address those two claims.

**C.    Plaintiff Atlas Oil Transportation's Breach of the Lease Agreements Against Extreme Petroleum (Count III)**

Plaintiffs allege in their Complaint that Extreme Petroleum materially breached the Lease Agreements with Atlas Oil Transportation by failing to relinquish possession of the two Leased Vehicles after the termination of the Master Agreement, which resulted in the termination of the Lease Agreements. (Compl. Count III.) Plaintiffs acknowledge in their Renewed Motion for Summary Judgment that Extreme Petroleum has since relinquished possession of the Leased Vehicles, after commencement of this lawsuit, but now contend that Extreme Petroleum materially breached the Lease Agreements by failing to pay for required repairs to one of the Lease Vehicles, which repairs "were needed and performed because of Extreme Petroleum's use of the vehicle and failure to repair the vehicle while in its custody and/or control pursuant to the Lease Agreements." (Pls.' Mot. at pp. 20-21, PageID.690-92, citing ECF No. 44-4, Declaration of Charles Wellman dated December 6, 2021 (Wellman Decl. III) ¶¶ 5-9, PageID.826-27.) Atlas Oil Transportation asserts that it was invoiced for, and that it paid, $32,033.80 for repairs to one of the vehicles leased by Extreme Petroleum, and contends that it is entitled to summary judgment in this amount, plus interest, for breach of the Lease Agreements. (*Id.*)

Defendants respond that Extreme Petroleum returned the two Lease Vehicles as requested, and that Atlas Oil Transportation has not made a claim for lease payments under the Lease Agreements. (Defs.' Resp. at pp. 6-7, PageID.1034-35.) Defendants assert that the vehicles were returned in good repair and working order, and that Plaintiffs never claimed otherwise until over a year after those vehicles were returned to Atlas Oil Transportation. (*Id.*) Defendants complain that Atlas Oil Transportation made the repairs without notifying Extreme Petroleum or giving it an opportunity to inspect the vehicles. (*Id.*) Defendants request that the Court deny Plaintiffs' claim for repair costs under Fed. R. Civ. P. 37(c)(1) for Plaintiffs' failure to disclose the claim for repair costs in any initial disclosures or in response to written discovery. (*Id.*)

Plaintiffs contend in their Reply brief that they only discovered the damage to the Lease Vehicle in September 2021, when the repair invoice was issued, and that the claimed damages were first incurred on November 21, 2021, when Plaintiffs paid the invoice. (Pls.' Reply at pp. 6-7, PageID.1023-24, citing Wellman Decl. III ¶¶ 5-9, PageID.826-27; ECF No. 44-5, Invoice, PageID.829-32.) Plaintiffs assert they timely disclosed this claim in their December 6, 2021 Renewed Motion for Summary Judgment, and thus Rule 37(c) is inapplicable. (*Id.*)

38

The parties' Lease Agreements state that "[u]pon the expiration or earlier termination of this Lease, [Extreme Petroleum] shall return the Leased Vehicle to [Atlas Oil Transportation] in good repair, condition and working order, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering the Leased Vehicle at [Extreme Petroleum's] cost and expense to such place as [Atlas Oil Transportation] shall specify." (Lease Agreements, ¶ 8, PageID.45, 50.)

Akins has declared that "[t]he two trucks at issue in this litigation were delivered to Atlas Oil's headquarters in Taylor, Michigan on July 17, 2020." (ECF No. 18-1, Declaration of Renae Akin (Akin Decl. II) ¶ 8, PageID.287.) It is not clear how long Plaintiffs had possession of the truck at issue before it was first inspected for repairs and the repairs were completed, but it appears that Plaintiffs had possession about one year before the truck was repaired. The invoice submitted by Plaintiffs at ECF No. 44-5 references multiple dates, as early as April 1, 2021 (a year after the complaint was filed) and continuing through September 14, 2021, the invoice date. (See Invoice, PageID.829-32.)

The Court finds that genuine issues of material fact exists as to Plaintiffs' claim that Defendants breached the Lease Agreements by failing to return the Lease Vehicles in "good repair, condition and working order," as required by the Lease Agreements upon "the expiration or earlier termination of this Lease[.]"

(Lease Agreements ¶ 8, PageID.45, 50.) There are questions of fact about the condition of the Leased Vehicles upon their return to Plaintiffs in July 2020, how long Plaintiffs had possession of the vehicles before they were inspected and repairs were required and made, and whether Plaintiffs or others used those trucks after their return in July 2020. If Defendants can establish a breach, there is also a material question of fact about Plaintiffs' damages claim, including whether any of the repairs were for "ordinary wear and tear resulting from proper use" of the truck, which costs are expressly excepted by the parties' Lease Agreements.

Accordingly, the Court denies Plaintiffs summary judgment on Count III of their Complaint.

### D.  Plaintiff Atlas Oil Transportation's Claim for Claim and Delivery Against Defendant Extreme Petroleum (Count IV)

Plaintiff Atlas Oil Transportation alleges in the Complaint that Extreme Petroleum failed to relinquish possession of the Leased Vehicles following termination of the Lease Agreements. (Compl. Count IV.) Plaintiffs request that the Court enter an order giving Atlas Oil Transportation "the right to immediate possession of the Leased vehicles, directing Defendants to relinquish possession of the Leased Vehicles, and directing the sheriff or other court officer of the county where the Leased Vehicles are located to seize them and deliver them to Atlas Oil

Transportation's possession, together with all other relief this Court deems appropriate." (*Id.*)

To prevail on a claim and delivery action, a plaintiff must prove that the defendant unlawfully took or detained goods or personal property, to which the plaintiff has a right to possess. *Sutton Leasing, Inc. v. Veterans Rideshare, Inc.*, 468 F. Supp. 3d 921, 938 (E.D. Mich. 2020) (citation omitted); Mich. Ct. R. § 3.105(A).

Plaintiffs argue in their motion that Atlas Oil Transportation is entitled to summary judgment on this claim. (Pls.' Mot. at pp. 22-23, PageID.692-93.) Plaintiffs claim that Extreme Petroleum "unlawfully failed and refused to relinquish possession of the Leased Vehicles to Atlas Oil Transportation at the requested location and at the requested time," and that "Atlas Oil Transportation was damaged by Extreme Petroleum's wrongful possession of the Leased Vehicles." (*Id.*, citing Werth Decl. I ¶¶ 30-34, PageID.110-11 and Wellman Decl. III ¶¶ 5-9, PageID.826-27.)

Defendants argue in their Response that Plaintiffs' claim-and-delivery claim is moot because the trucks have been delivered to Atlas Oil Transportation. Defendants contend that Extreme Petroleum lawfully took possession of the trucks pursuant to the Lease Agreements, and that it returned the trucks to Atlas Oil

Transportation once the leases were terminated and Extreme Petroleum was directed as to where to return the trucks. (Defs.' Resp. at p. 8, PageID.1036.)

Plaintiffs do not address their claim-and-delivery claim in their Reply brief, and they concede that Defendants have returned the Leased Vehicles. (Wellman Decl. III ¶ 5, PageID.826 ("Extreme Petroleum returned the leased vehicles referenced in Counts III and IV of Plaintiffs' Complaint[.]").) Thus, there is no genuine issue of material fact with respect to whether Defendants returned the Leased Vehicles to Atlas Oil Transportation.

Because the relief Plaintiffs affirmatively request in their claim-and-delivery claim in Count IV is for possession of the trucks, and because it is undisputed that Plaintiffs have possession of the trucks, the Court dismisses this claim as moot. To the extent Plaintiffs seek monetary damages in this claim (in their request for "all other relief this Court deems appropriate"), such damages would be encompassed in Plaintiffs' claim for breach of the Lease Agreements in Count III above.

### E. Plaintiffs' Claim and Delivery/Foreclosure of Security Interest Claim Against Extreme Petroleum (Count V)

Plaintiffs assert in the Complaint that the Master Agreement granted Atlas Oil a security interest in "the Collateral," described as including, "without limitation, all equipment, accounts, and inventory" of Extreme Petroleum. (Compl.

Count V.) (Master Agreement ¶ 2(c), PageID.15.) Plaintiffs request that the Court award Plaintiffs "immediate possession of all the Collateral pending entry of a judgment of possession in favor of Plaintiff; permit Plaintiff to sell the Collateral and apply the net proceeds against the indebtedness owed to Plaintiff; award Plaintiff a deficiency judgment if the sale of the Collateral is not sufficient to satisfy the indebtedness owed to Plaintiff; award Plaintiff costs, interest, and attorney fees, both prejudgment and post-judgment; and any other relief this Court deems just and equitable." (Compl. Count V.)

Plaintiffs argue in their motion that Atlas Oil is entitled to summary judgment on its claim for claim and delivery/foreclosure of security interest against Extreme Petroleum for the same reasons Plaintiffs are entitled to summary judgment on their claims for breach of the Agreements. (Pls.' Mot. at pp. 23-24, PageID.693-94.) The Master Agreement granted Atlas Oil a security interest in "Extreme Petroleum's right, title and interest in and to" the Collateral (Master Agreement ¶ 2(c), PageID.15), and Plaintiffs assert that Atlas Oil perfected its security interest in the Collateral by filing a Financing Statement covering the Collateral in Texas, where the property is located. (Werth Decl. I ¶ 11, PageID.107 and ECF No. 7-4, Financing Statement, PageID.134-74). Plaintiffs state that Defendants have failed to surrender possession of their Collateral and that Atlas

Oil is entitled to possession of the Collateral. (Werth Decl. I ¶¶ 25-28, PageID.109-10.)

Defendants argue in their Response brief that the Court should deny Plaintiffs summary judgment on this claim because "it is premature for Atlas Oil's claims to be reduced to judgment." (Defs.' Resp. at p. 8, PageID.1036.) Defendants further contend that, "even if Atlas Oil were entitled to judgment, this Court is not the proper forum for enforcing a judgment against Extreme Petroleum property in Texas." (*Id.*)

Under the Full Faith and Credit Clause, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998).

The Court finds that it is undisputed that Defendants have breached the parties' Contracts, that the Master Agreement granted Atlas Oil a security interest in Extreme Petroleum's "Collateral," as defined in the Agreement, and that Atlas Oil has perfected its security interest in this Collateral by filing a financing statement in Texas that covers the relevant Collateral. Plaintiffs therefore are entitled to summary judgment on their claim in Count V of their Complaint against Extreme Petroleum.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Renewed Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

The Court **GRANTS** Plaintiffs summary judgment on their breach of contract claims in **Counts I and II** of the Complaint **as to liability** against Defendants Extreme Petroleum and Renae Akins. The Court accepts as undisputed Plaintiffs' calculations that, following the partial judgment award in this case, Defendants continue to owe $424,685.68 in principal based on the unpaid invoices, and that Defendants are entitled to a set-off in the amount of $192,585.42 for third party carrier services Extreme Petroleum provided, for a total principal amount owed, before any additional offsets discussed herein, of $232,100.26. The Court finds that there is a fact issue as to Defendants' claims for additional offset for (1) an alleged duplicate payment in the amount of $33,826.25 and (2) an alleged unauthorized draft for $5,644.69, and the Court will schedule an evidentiary hearing to address those two claims.

The Court **DENIES** Plaintiffs summary judgment on **Counts III and IV** against Defendant Extreme Petroleum.

The Court **GRANTS** Plaintiffs summary judgment against Defendant Extreme Petroleum on **Count V**.

45

The Court further **GRANTS** Plaintiffs claim for contractual costs and attorney fees in **Count VI** against Defendants Extreme Petroleum and Renae Akins, which claim will be decided upon entry of a final judgment.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: May 5, 2022